

SO ORDERED,

Judge Jason D. Woodard

United States Bankruptcy Judge

The Order of the Court is set forth below. The case docket reflects the date entered.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| FLOYD NUNNELEE and | ) | Case No.: 13-12929-JDW |
| BRENDA NUNNELEE, | ) | |
| | ) | |
| Debtors. | ) | Chapter: 7 |

_____

| | | |
|---|---|---|
| LISA HIGGINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | A.P. No.: 14-01066-JDW |
| | ) | |
| FLOYD NUNNELEE, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

This adversary proceeding came before the Court for trial on September 28, 2016, regarding the *Complaint* (A.P. Dkt. # 1),[1] which was later amended (A.P. Dkt. # 42)(as amended, the "Complaint"). The Complaint was filed by

---

[1] Citations to the docket in the main bankruptcy case will be to "Bankr. Dkt. #___" and citations to the adversary proceeding will be to "A.P. Dkt. #___".

1

Lisa Higgins (the "Plaintiff") against the debtors, Floyd and Brenda Nunnelee. Immediately following the trial, Brenda Nunnelee was dismissed as a party to this adversary proceeding (A.P. Dkt. # 75), leaving Floyd Nunnelee (the "Defendant") as the only remaining defendant. The Plaintiff seeks a determination that the debts owed to her by the Defendant are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

At the trial, Brittan Robinson appeared as counsel for the Plaintiff, and Kenneth Mayfield appeared as counsel for the Defendant. The Court heard arguments and received documents into evidence upon stipulation of the parties. Testimony was also heard from the Plaintiff and the Defendant. After a careful review of the evidence, the pleadings, and the applicable law, this Court finds and concludes that the Plaintiff has failed to carry her burden and that the Defendant's debts to Plaintiff are dischargeable.

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334(b) and the United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc Dated August 6, 1984. This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(I) and (O).

## II. FINDINGS OF FACT[2]

The Plaintiff (Lisa Higgins) is the sister of the Defendant (Floyd Nunnelee), with both parties sharing the same father, Floyd Mason Nunnelee ("Mr. Nunnelee"). Mr. Nunnelee passed away in March of 2010 and bequeathed his property through a will. The will named the Plaintiff as the sole beneficiary and did not bequeath any assets to the Defendant or Mr. Nunnelee's other living daughter, Rhonda Gallup. The will was probated in Shelby County, Tennessee. The will was not contested, and the estate was closed in December of 2010. The parties agree that the Plaintiff was the only beneficiary of Mr. Nunnelee's will, and that the will does not mention the Defendant. As a result, the property of Mr. Nunnelee's estate passed to the Plaintiff.

### A. The Transfers

Beginning in April of 2010, shortly after Mr. Nunnelee passed away, the Plaintiff began transferring money to the Defendant. These transfers were loans and not advances on the Defendant's share of the inheritance, Mr. Nunnelee's will being clear that the Defendant was not to inherit any money from him. The evidence at trial and the uncontested, fully probated will both

---

[2] To the extent any of the findings of fact are considered conclusions of law, they are adopted as such. To the extent any of the conclusions of law are considered findings of fact, they are adopted as such.

reveal that the transfers from the Plaintiff to the Defendant were understood as, and were in fact, loans.

The first loan, made in three installments totaling $50,000, was made so that the Nunnelees could refinance their home. This was the only loan made prior to the Nunnelees losing their jobs. Almost a year after the death of Mr. Nunnelee, in February of 2011, Floyd and Brenda Nunnelee were both terminated from their employment at Aluminum Extrusions, Inc ("AEI"). Shortly after losing their jobs, the Nunnelees borrowed additional funds from the Plaintiff. The Nunnelees continued to receive money from the Plaintiff until February of 2012. In total, the Plaintiff loaned the Nunnelees approximately $200,000.

The Plaintiff testified that the Defendant gave her a promissory note, handwritten by him, to evidence the loans made to him. She maintains that she did not request the promissory note, but the Defendant offered it because he was aware that she had concerns about the loans. The promissory note allegedly provided that the Defendant "promised to pay back the money" and covered "all of the loans" made from the Plaintiff to the Defendant. The promissory note was not introduced at trial and is said to be lost. The Defendant firmly denies the existence of the promissory note.

B.    The Alleged Misrepresentations

During the time the loans were being made to the Defendant, the Plaintiff alleges that the Defendant made two significant representations to her regarding his assets and his ability to repay her.  First, the parties discussed a lawsuit that the Defendant was bringing against AEI, seeking to recover somewhere between $3,000,000 and $5,000,000 (the "Lawsuit").  Second, the Defendant told the Plaintiff that he owned a commercial building (the "Building"), which he valued at approximately $200,000.  The lost promissory note allegedly made reference to the Building, which the Defendant promised to convey to the Plaintiff in the event of a default of the promissory note.  However, the Plaintiff never requested a lien on the Building, and she was never granted a deed of trust.

As to the Lawsuit, it is public record that the Defendant did in fact file a lawsuit against Floyd Markling and AEI in the Chancery Court of Tate County, Mississippi.  Mr. Markling was the previous owner of AEI and the Defendant's former boss.  The Defendant alleged that Mr. Markling promised that upon selling the company, he would award the Defendant a bonus for his hard work and loyalty to AEI.  AEI was not sold, however, and the Defendant never received the bonus.  Later, the Defendant brought the Lawsuit to recover the promised bonus.  The Defendant believed that his Lawsuit would be successful, and, more importantly, the Plaintiff conceded that she believed

5

that the Defendant felt his Lawsuit was legitimate. For reasons that remain unclear, the Defendant's lawyer withdrew from the case sometime after the Nunnelees filed their bankruptcy petition. The Lawsuit was eventually dismissed.

The second representation concerned the Building. The Defendant told the Plaintiff that he owned a commercial building in Tate County, Mississippi that was worth around $200,000. Southern Bancorp Bank held a deed of trust on the Building securing a debt in the amount of $110,000. The Plaintiff and the Defendant discussed the Building, but it is unclear what was said about it. The Plaintiff claims that the Defendant offered to give her the Building if he defaulted on the loans she made to him. The particulars of this transaction are unclear and were never formalized.[3] Most importantly, the parties disagree as to whether the Defendant represented to the Plaintiff that he owned the Building free and clear of all liens. The Defendant testified that the Plaintiff was aware of the deed of trust because she knew that the Defendant made monthly payments on the Building. On the other hand, the Plaintiff could not even say with certainty that the Defendant told her the Building had no liens on it. She testified that the Defendant "either told [her] or she assumed it," but she does not remember which. Later, the

---

[3] The only written evidence of this agreement is the alleged promissory note (not a deed of trust), which the Plaintiff lost, if it existed.

6

Defendant fell behind on his mortgage payments and Southern Bancorp Bank foreclosed on the property.

The Plaintiff's loans to the Defendant ceased in February of 2012. In July of 2013, the Nunnelees filed bankruptcy (Bankr. Dkt. # 1). In their initial schedules, they did not list the Plaintiff as a creditor. The Plaintiff testified that she did not consider herself to be a creditor of the Defendant because she was his sister. In April of 2014, the Nunnelees amended their schedules to add the Plaintiff as a creditor, listing the debt owed to her as "incurred for a 'loan'" in the amount of $200,000 (Bankr. Dkt. # 90). Interestingly, the Nunnelees did not list this debt as disputed. After being added as a creditor, the Plaintiff filed a *Motion to Extend Time to File a Complaint* (Bankr. Dkt. # 93), which voiced her surprise and frustration with the Defendant's bankruptcy. Later, the Plaintiff initiated this adversary proceeding seeking a determination that the debts owed to her are nondischargeable (A.P. Dkt. # 1, 42).

### III. CONCLUSIONS OF LAW

Before reaching the issue of dischargeability, the Court must first address whether the transfers made from the Plaintiff to the Defendant were loans or merely advances on the Defendant's portion of his inheritance from Mr. Nunnelee's estate.

A.     Transfers from Plaintiff to Defendant were Loans

The parties disagree about the nature of the transfers at issue here. The Plaintiff alleges that the transfers made to the Defendant were loans and that both parties understood that they would be paid back over time. The Defendant argues that the transfers were not loans, but instead were advances on his inheritance from Mr. Nunnelee. After reviewing the evidence and the law, it is clear that the transferred funds were loans. And not only that, but it is also clear that both parties understood the transfers to be loans.

As a matter of law, the Defendant did not inherit from Mr. Nunnelee and has no right to the proceeds of his estate. Under Tennessee law, an estate that exceeds $50,000 in value and/or includes real estate property must be administered with full-court supervision, also known as "solemn form" probate. 18 TENN. PRAC., Probate Law § 4.4 (3d ed.). When a will is probated under the solemn form procedures, any will contest must be made at or before the formal hearing where the will is presented for probate. *In re Estate of Boote,* 198 S.W.3d 699, 711-14 (Tenn. Ct. App. 2005).

The assets in Mr. Nunnelee's estate exceeded $50,000 and also consist of real estate property. Thus, solemn form was presumably used, and, if so, the will is final and may not now be contested. Moreover, "a testator's failure to provide for a living child in his or her will is ordinarily equivalent to a

disinheritance of that child." *Bradley v. Lewis* (*In re Eden*), 99 S.W.3d 82, 93 (Tenn. Ct. App. 1995). The parties agree that the Plaintiff was named as the sole beneficiary of Mr. Nunnelee's estate and that the Defendant was not mentioned at all in the will.

As to the Defendant's perception of the funds received, the Court finds that he knew that the transfers were loans. The Plaintiff and Defendant both testified that the Defendant made a few small payments to the Plaintiff in an effort to pay back part of the loans. The Defendant testified that he also performed certain services for the Plaintiff, such as automobile work and mowing grass, presumably in an effort to reimburse the Plaintiff. While the parties disagree about the amount and manner of the repayment, the evidence shows that the Defendant made payments to the Plaintiff that can only be understood as payments towards his outstanding loans. Further, the Nunnelees listed the Plaintiff as a creditor in their amended bankruptcy schedules as holding an undisputed debt of $ 200,000 (Bankr. Dkt. # 90).

The funds transferred to the Defendant were loans. The Court now turns to the dischargeability of those loans.

B. Nondischargeability Under § 523(a)(2)(A)

Plaintiff asserts that the debts owed by the Defendant are nondischargeable pursuant to § 523(a)(2)(A) of the Bankruptcy Code,[4] specifically alleging false representations and actual fraud. The Plaintiff bears the burden of proof of establishing, by a preponderance of the evidence, that the debts in question should be excepted from discharge. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). This is a high burden for the Plaintiff to carry. As the Court of Appeals for the Fifth Circuit has noted, "exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *Hudson v. Raggio & Raggio, Inc. (In re Hudson),* 106 F.3d 355, 356 (5th Cir. 1997).

Section 523(a)(2)(A) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

>   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
>>   (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

---

[4] Unless otherwise indicated, all chapter, section and rule references are to the "Bankruptcy Code," 11 U.S.C. § 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

11 U.S.C. § 523(a)(2)(A). As a threshold issue, the exception made for "statement[s] respecting the debtor's or an insider's financial condition" does not apply here. The Fifth Circuit has held that the term "financial condition" should be narrowly construed to mean the "general overall financial condition of an entity or individual, that is, the overall value of property and income as compared to debt and liabilities." *Bandi v. Becnel (In re Bandi),* 683 F.3d 671, 676 (5th Cir. 2012)(citing *Engler v. Van Steinburg,* 744 F.2d 1060, 1060-61 (4th Cir. 1984)). In *Bandi*, the debtors represented that they owned certain property in order to lead the creditor to believe that their "personal guarantees of a loan…would be backed by some measure of wealth." *Id.* at 678. The Fifth Circuit found that these misrepresentations were not "statements respecting their financial condition within the meaning of 11 U.S.C. § 523(a)(2)(A)." *Id.* at 679. Likewise, the alleged misrepresentations made by the Defendant were not statements concerning his "financial condition," and they properly fall within § 523(a)(2)(A).

C. Two Separate Paths to Nondischargeability Under § 523(a)(2)(A): False Representations and Actual Fraud

In construing § 523(a)(2)(A), the Fifth Circuit has distinguished between (1) actual fraud and (2) false pretenses and false representations; so there are two distinct paths to a conclusion of nondischargeability under that subsection. *Bank of La. v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir.

11

1991). The Plaintiff has pleaded both false representation and actual fraud. While the Plaintiff has alleged false representation and actual fraud separately, the allegations she relies on are the same for each, namely the Defendant's statements concerning the Building and the Lawsuit.[5] More specifically, the Plaintiff argues that the Defendant made representations to her about the Building and the Lawsuit with the intent to deceive her into loaning him more money.

### 1. *False Pretenses or a False Representation*

For false pretenses and false representations, an objecting creditor must prove by a preponderance of the evidence that the debtor's representation was: (1) a knowing and fraudulent falsehood, (2) describing past or current facts (*not* future facts), (3) that was relied on by the other party. *Allison v. Roberts (In re Allison),* 960 F.2d 481, 483 (5th Cir. 1992). The reliance contemplated does not have to be objectively reasonable, but merely subjectively justifiable. *Field v. Mans*, 516 U.S. 59, 76 (1995).

### 2. *Actual Fraud*

The precise elements of actual fraud are currently in flux. Before the Supreme Court's opinion *Husky International Electronics, Inc. v. Ritz (In re Ritz)*, 136 S.Ct. 1581 (2016), the five elements of actual fraud were well-

---

[5] The Plaintiff did not solicit any testimony about the Lawsuit at trial. Neither did the attorney for the Plaintiff mention the Lawsuit in opening or closing statements. Even still, as the Plaintiff has not withdrawn her allegations about the Lawsuit, the Court must address it as well.

defined. An objecting creditor was required to prove by a preponderance of the evidence that:

(1) the debtor made representations;

(2) at the time they were made, the debtor knew they were false;

(3) the debtor made the representations with the intention and purpose to deceive the creditor;

(4) the creditor relied on such representations (reliance does not have to be reasonable, just justifiable); and

(5) the creditor sustained losses as a proximate result of the representations.

*RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995). In *Ritz,* the Supreme Court reversed the Fifth Circuit, and held that no actual representation is required. 136 S.Ct. at 1582. *Ritz* made clear that the "term 'actual fraud' . . . encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Id.* at 1586.

The Supreme Court did not establish new elements for discerning "actual fraud," however it did provide general guidance for such claims. The Supreme Court split "actual fraud" into two parts: actual and fraud. *Id.* "The word 'actual' has a simple meaning in the context of common-law fraud: It denotes any fraud that 'involv[es] moral turpitude or intentional wrong.'" *Id.* (quoting *Neal v. Clark,* 95 U.S. 704, 709 (1878)). Consequently, the term "actual" excludes constructive or implied fraud. *Id.* As to the fraud

13

element, the Supreme Court did not define the term precisely, but it did note that fraud generally "connotes deception or trickery." *Id.*

While *Ritz* has expanded the scope of "actual fraud," the Plaintiff here has not alleged a fraudulent conveyance scheme, such as the one at issue in *Ritz*. Instead, the Plaintiff alleges that the Defendant's statements about the Lawsuit and the Building amounted to "actual fraud" under § 523(a)(2)(A). Because she relies on these two representations and does not allege a fraudulent conveyance scheme or some other fraudulent transaction, the *Ritz* opinion has limited applicability.

### D. Plaintiff Has Not Proven Her Allegations Regarding the Building or the Lawsuit

The Plaintiff's claims under actual fraud and false representation both fail for similar reasons. False representation requires a "knowing and fraudulent falsehood" that has not been proven here; and actual fraud requires an "intention and purpose to deceive the creditor" (whether by misrepresentations or by some alternate scheme) that has also not been proven. In this case, the two elements are interrelated because the Plaintiff alleges that the Defendant deceived her by making knowingly fraudulent representations to her. As such, if the Plaintiff cannot prove that the Defendant made knowingly fraudulent statements in order to induce the

Plaintiff's lending, the claim for actual fraud necessarily fails alongside the false representation claim.

### 1. *The Building*

When considering whether a "knowing and fraudulent falsehood" has been made, the subjective mindset of the promisor is the focus. "'A misrepresentation is fraudulent if the maker . . . knows or believes . . . the matter is not as' represented, or 'does not have the confidence in the accuracy of his representation' as stated or implied, or 'knows . . . he does not have the basis for his representation' as stated or implied." *AT&T Card Servs. v. Mercer (In re Mercer),* 246 F.3d 391, 407 (5th Cir. 2001)(quoting RESTATEMENT (SECOND) OF TORTS § 526).

To prove actual fraud and that the Defendant made a knowing and fraudulent statement about the Building, the Plaintiff has attempted to show that the Defendant falsely represented to her that the Building was not encumbered by any liens. The Plaintiff testified that if she knew there were liens on the Building she would not have felt comfortable lending the Defendant money. Consequently, it is imperative that the Plaintiff prove that the Defendant did in fact tell her that the Building was free and clear of all liens. The Plaintiff has not done so.

The Defendant testified that he never told the Plaintiff that the Building was free and clear of liens, and in fact the Plaintiff was aware that

Document Page 16 of 19

he made monthly payments to the secured creditor. While she did not know the details of the deed of trust or who the creditor was, she knew that the Building was encumbered. The only evidence before the Court purporting to show that the Defendant told the Plaintiff that he owned the Building outright is the Plaintiff's testimony that the Defendant "either told [her] or she assumed [that the Building did not have any liens on it]."

The totality of the evidence, including the Defendant's testimony and the Plaintiff's testimony at trial, persuade the Court that, at best, the Plaintiff assumed that the Building was free and clear of liens. The Plaintiff has failed to show that the Defendant made statements about the Building with the "intention and purpose to deceive" her. *RecoverEdge L.P.,* 44 F.3d at 1293. Because the Plaintiff bears the burden of proof here, her equivocations are insufficient to prove that a false representation was made.

Beyond these deficiencies, the Court also questions whether, if the Defendant were found to make a knowing and fraudulent statement, the Plaintiff's reliance was justifiable. Section 523(a)(2)(A) requires only justifiable reliance, as opposed to reasonable reliance. *Field,* 516 U.S. at 74-75. The justifiable reliance standard imposes no duty to investigate unless the falsity of the representation is readily apparent. *Mercer,* 246 F.3d at 418. However, a promisee "is required to use his senses and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent

to him." *Field,* 516 U.S. at 388. Consequently, "if 'under the circumstances, the facts should be apparent to one of [the promisee's] knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning he is being deceived,' reliance is not justified without further investigation." *Barvie v. Broadus,* 516 B.R. 378, 387 (Bankr. S.D. Miss. 2014)(quoting *Mercer,* 246 F.3d at 418). Applying this standard to the Plaintiff's actions raises serious questions as to whether there was justifiable reliance.

It is odd that the Plaintiff loaned such a large sum of money without ever investigating the status of the title. She testified that she was uncomfortable loaning the Defendant the money, and also that she was aware that the Nunnelees had both lost their jobs. The Plaintiff had every right to search the title and records to determine whether there were any liens or encumbrances on the Building. The Plaintiff could have also simply asked the Defendant about the Building's status and asked him to provide a title report or policy or other records. She could have demanded a deed of trust. The Plaintiff did not attempt to attach her own lien on the Building or secure a deed of trust for the property, either of which would be typical of a creditor seeking to secure its loan.

After weighing the evidence, the Court finds that the Plaintiff has not carried her burden. *Grogan,* 498 U.S. at 286. Because the Plaintiff has not

shown the Defendant's deceitful intent or fraudulent conduct regarding the Building, the nondischargeability claim fails with regard to the Building.

### 2. *The Lawsuit*

The Plaintiff's claims with regard to the Lawsuit also fail. The crucial question is whether, at the time the Defendant told the Plaintiff of the Lawsuit, he knew his statements were false. By the Plaintiff's own admission, this was not the case. The Defendant did not tell the Plaintiff anything about the Lawsuit that he knew to be false with the intention of deceiving her. The evidence is clear that there was in fact a lawsuit pending that was brought by the Defendant, and the Plaintiff conceded that she knew the Defendant believed his Lawsuit was legitimate, and that he hoped it would be successful. As a result, even if the Court were to accept the Plaintiff's testimony—that she relied on the Defendant's statements about the Lawsuit in loaning him the money—the Defendant's statements were not a "knowing" falsehood, much less a "knowing and fraudulent" falsehood. And, moreover, these statements were not made with the intent to deceive the Plaintiff.

Whether the Lawsuit was ultimately successful or not is irrelevant. The Plaintiff has failed to meet her burden of proving false representation or actual fraud under §523(a)(2)(A).

## IV. CONCLUSION

The Plaintiff has a high burden when seeking to prove that a debt is nondischargeable. *State v. Soileau (In re Soileau),* 488 F.3d 302, 311 (5th Cir. 2007). "Any exception to the general discharge of a debtor's debts is strictly governed by the Code and construed narrowly in favor of the debtor and against the creditor requesting the determination." *Citizens Bank & Trust Co. v. Case* (*In re Case*), 937 F.2d 1014, 1024 (5th Cir. 1991). The Plaintiff has not overcome her burden. While the Plaintiff has proven that the money she transferred to the Defendant were indeed unsecured loans (and shall be treated as such in this bankruptcy case), the loans were not given in reliance on knowing, fraudulent statements made by the Defendant. Because the funds were not "obtained by . . . false pretenses, a false representation, or actual fraud," the Plaintiff's nondischargeability claim fails. A separate final judgment will be entered in accordance herewith.

##END OF ORDER##